IN THE  UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

EDDIE AHMAD HAYES, #233 519,          *

    Plaintiff,                                        *

    v.                                                   *          2:08-CV-416-MEF
                                                                              (WO)
WARDEN GILES, *et al.*,                       *

    Defendants.                                   *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Eddie Hayes, a state inmate, challenges the medical treatment provided to him at the Ventress Correctional Facility ["Ventress"].  Specifically, Plaintiff alleges that Defendants failed to provide adequate medical treatment for his serious mental disorder.  He further complains that Defendants discriminated and retaliated against him because of his mental disability  in violation of the Americans with Disabilities Act ["ADA"]. Plaintiff names Warden Giles, Dr. Ferrell, Mrs. James, and Mr. Jenkins as defendants in this cause of action.  Plaintiff seeks injunctive relief and $25,000.00 in punitive damages from each defendant.

Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary materials addressing Plaintiff's claims for relief.  In these documents, Defendants Giles and Jenkins argue that they are entitled to summary judgment because they

did not violate any right to which Plaintiff is entitled.   Defendants Ferrell and James assert that Plaintiff's claims presented against them are due to be dismissed because Plaintiff failed to exhaust an administrative remedy available to him at Ventress. The court provided Plaintiff an opportunity to file a response to the arguments presented by Defendants.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat Defendants' written reports as motions for summary judgment.   (*See Doc. No. 34*); *see Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008), *cert. denied,* 129 S.Ct. 733 (Dec.8, 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment [motion,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible.").   Thus, this case is now pending on Defendants' motions for summary judgment. (*Doc. Nos. 13, 14, 22, 32*.)   Upon consideration of these motions, the evidentiary materials filed in support thereof, and Plaintiff's responses thereto (*Doc. Nos. 29, 40*), the court concludes that Defendants' motions are due to be granted.

## I.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.

2

2007) (per curiam) (citation omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants  Ferrell and James have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's failure to exhaust administrative remedies. Defendants Giles and Jenkins have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact with respect to the claims lodged against them.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists.  *Clark v. Coats and*

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

3

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

To survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of administrative remedies.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id.* at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*,

4

65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...."); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome

of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 525, 126 S.Ct. 2572, 2576, 165 L.Ed.2d 697 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine issue

6

of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  STANDARD OF REVIEW FOR DELIBERATE INDIFFERENCE

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendant acted with deliberate indifference to his health.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").  When seeking relief based on deliberate indifference of prison  personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual

knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114

8

S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

## III.  DISCUSSION

*A.  Request for Injunctive Relief*

Plaintiff is no longer incarcerated at the Ventress Correctional Facility.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Ventress Correctional Facility, any request for declaratory and/or injunctive relief has been rendered moot.

*B. The Medical Claim*

   *i. The ADOC Defendants*

Plaintiff alleges in his complaint that Defendants failed to provide him with adequate medical treatment for his serious mental disorder. According to the complaint, Plaintiff's wife contacted Defendant Giles and informed him of Plaintiff's mental disability. She explained that Plaintiff had been taking psychotropic medication for years but that Dr. Ferrell had discontinued his prescription. Defendant Giles advised Plaintiff's wife that he would meet with Plaintiff concerning the issue of his medication but indicated that he was not a doctor and, therefore, could not do anything about Plaintiff's medication. Although Defendant Giles met with Plaintiff regarding his medical concerns, Plaintiff complains that the Warden never spoke with Dr. Ferrell about the matter. (*Doc. No. 1.*)

With regard to Defendant Jenkins, Plaintiff asserts that he informed Defendant Jenkins on May 19, 2008 that Dr. Ferrell had discontinued his psychotropic medication despite his having previously been diagnosed with a mental disorder. Due to the discontinuation of his medication, Plaintiff told Defendant Jenkins that he experienced insomnia, anxiety, great pain, depression, paranoia, and hallucinations. Plaintiff claims that Defendant Jenkins told him there was nothing he could do for him and thereafter ignored him and dismissed him without reviewing his medical records or consulting with Dr. Ferrell about his condition. (*Doc. No. 1.*)

Defendants Giles and Jenkins acknowledge that Plaintiff spoke with them regarding

10

his mental health matters and his desire to be back on mental health medication(s) he was previously prescribed.  Warden Giles is neither a psychiatrist nor trained in mental health medication.  He states, however, that his duties as Warden at Ventress include ensuring that inmates have the opportunity to see the psychiatrist and mental health staff as needed.  After talking  with Dr. Ferrell about Plaintiff's mental health concerns, Defendants Giles found Plaintiff's problem to be connected with his inability to get a specific medication which he desired.  Defendant Giles otherwise found no need to doubt Dr. Ferrell's medical expertise and her determination that she was treating Plaintiff with the proper medication for his mental condition.  (*Doc. No. 22, Exh. 1.*)

Plaintiff's medical records show that at his initial visit with Dr. Ferrell in August 2007 he complained that he was not receiving medication he had bee taking in the free world - Clonazepam and Ativan.[2]  Because Dr. Ferrell believed that Plaintiff needed neither, she confirmed with him that she would not prescribe those medications because in her medical opinion they were not medically necessary.  She based her decision on her assessment that Plaintiff suffered from a mood disorder and exhibited certain antisocial traits but that he did not suffer from any other mental illness or deficiency.  Dr. Ferrell also noted during her

---

[2]The evidence before the court reflects that Dr. Ferrell is a psychiatrist with both a medical and doctoral degree and is a Diplomate of the American Board of Psychiatry and Neurology.  (*Doc  No. 13, Ferrell Affidavit.*) Psychiatrists can order diagnostic laboratory tests, prescribe medications, provide psychotherapy, evaluate and treat psychological and interpersonal problems, and give continuing care for psychiatric problems. *Available at* http://www.abpn.com/public.htm

initial assessment of Plaintiff that he appeared to be seeking Clonazepam and Ativan and would not be satisfied with any medication which was not a benzodiazepine-based medication, such as Clonazepam or Ativan, or a narcotic pain medication.[3] At the time of her initial visit with Plaintiff, he was taking Tegretol, Triavil, and Pamelor. (*Doc. No. 13, Ferrell Affidavit, Plaintiffs' Medical Records*.)

Plaintiff continued to receive his 90-day evaluations with Dr. Ferrell. In February 2008 Plaintiff's Triavil prescription was discontinued due to its unavailability in the prison system. Dr. Ferrell substituted Elavil which she felt was a better medication for Plaintiff. During his May 2008 90-day evaluation, Plaintiff informed Dr. Ferrell that he was doing okay. Dr. Ferrell informed Plaintiff that his prescriptions for Elavil and Pamelor would be discontinued because they had been made non-formulary and, thus, unavailable in the prison system. Nevertheless, Dr. Ferrell believed neither medication was necessary for Plaintiff any longer. She continued his prescription for Tegretol, a mood stabilization medication, which she found Plaintiff had benefitted from in the past and from which he continued to benefit. Dr. Ferrell determined that the medication Plaintiff was no longer taking was of little consequential value to him anyway and their discontinuation was appropriate and in accordance with relevant standards of care. (*Doc. No. 13, Ferrell Affidavit, Plaintiff's Medical Records*.)

---

[3]Benzodiazepine-based medications can be used to treat generalized anxiety disorder. *Available at* http://www.merck.com/mmpe/sec15/ch196/ch196b.html.

In response to Defendants Giles and Jenkins' dispositive motion, Plaintiff has come forward with no evidence to rebut their evidence concerning their knowledge of his complaint. In fact, Plaintiff concedes that Defendants Giles and Jenkins did not personally participate or have any involvement in matters associated with his allegations concerning his prescription medication.  (*Doc. No. 29.*)   *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (in the absence of a  reason to believe, or actual  knowledge, that medical staff is administering inadequate medical care,  non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th  Cir. 1996) ( "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing.") (internal quotations omitted);  *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).  As the burden is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim, *Celotex,* 477 U.S. at 322, and as Plaintiff  concedes that there is no genuine issue about deliberate indifference on the part of Defendants Giles and Jenkins and there is otherwise no  evidence to support an Eighth Amendment claim against them,  their motion for summary judgment is due to be granted.

   *ii. The Medical Defendants*

13

Plaintiff challenges the constitutionality of mental health treatment provided to him by Dr. Ferrell and Mrs. James, a mental health professional.  He contends that he informed Defendant James that he began experiencing physical and mental problems after Dr. Ferrell discontinued his psychotropic medication which he had taken for years. Plaintiff asserts that Defendant James informed him that there was nothing she could do for him. With regard to Dr. Ferrell, Plaintiff states he had a conversation with her in May 2008 at which time the physician informed Plaintiff that she would be discontinuing his psychotropic medication. Plaintiff complains that Dr. Ferrell failed to explain to him her decision to discontinue his medication and refused to discuss the matter with him. He further maintains that Dr. Ferrell did not examine him, review his medical records, or discuss her decision with the head physician at Ventress prior to discontinuing his psychotropic medication.  In response to the complaint, Defendants Ferrell and James deny Plaintiff's allegations and maintain that Plaintiff's complaint against them is subject to dismissal because he has failed to exhaust an administrative remedy available to him at Ventress which is a mandatory precondition to filing this cause of action.[4]  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to

---

[4] The court notes that in his response to Defendant James' dispositive motion, Plaintiff concedes that Defendant James did not personally participate or have any direct involvement in matters associated with his prescription medication. (*Doc. No. 29.*)

14

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." 548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387. The Court reasoned that because proper exhaustion of

15

administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The evidence in this case establishes that Ventress  provides a grievance procedure for inmate complaints related to their psychological care. (*Doc. No. 32, Fields Affidavit*.) This administrative remedy is available to all  inmates at  Ventress including Plaintiff at the time of his incarceration there. (*Id*.)  The mental health defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claim against them concerning his mental health services at Ventress. (*Doc. Nos. 13, 14.*)  To support this assertion, Defendant Ferrell has offered the declaration of Brenda Fields, the Manager of Quality Assurance for Mental Health Management Correctional Services which provides mental health services to inmates in the Alabama prison system. Defendant Ferrell's evidence shows  that Plaintiff failed to file a formal grievance while he was incarcerated at Ventress with regard to his complaints concerning his medication in satisfaction of the exhaustion requirement.  (*Doc. No. 32, Fields Affidavit*.)

The court has thoroughly reviewed the evidentiary materials filed in this matter.  This

16

material demonstrates that Plaintiff failed to properly exhaust the grievance procedure provided to him during his incarceration at Ventress. The record before the court indicates that Plaintiff  has provided nothing to refute or explain the mental health defendants' evidence showing he failed to file a formal grievance related to mental health services.  The undersigned finds there is no dispute of material fact that Plaintiff failed to exhaust his administrative remedies with respect to his claim of unconstitutional mental health care against Defendants Ferrell and James.  *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The record in this case reflects that the mental health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment. (*Doc. No. 32, Fields Affidavit*.) The evidentiary materials submitted by the mental health defendants demonstrates that Plaintiff failed to file the requisite grievance with respect to the actions about which he complains in the instant complaint.  (*Id*.)  Plaintiff does not dispute his failure to exhaust the administrative remedy available in the prison system prior to filing this case.  (*Doc. No. 40*.)

As mentioned, Plaintiff is no longer incarcerated at Ventress.[5]   Thus, the

---

[5] Plaintiff is currently incarcerated at the Limestone Correctional Facility in Harvest, Alabama.

17

administrative remedy provided by the mental health defendants at Ventress is no longer available to Plaintiff.  Under such circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Keirk*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (Inmate's "federal lawsuits ... properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no circumstances justified the failure to exhaust.).

## C.  The Americans With Disabilities Act Claim

Plaintiff alleges in conclusory fashion that he was subjected to discrimination and retaliation due to his mental disability in violation of the Americans with Disabilities Act.[6] (*Doc. No. 1*.)  The ADA prohibits the exclusion of otherwise qualified participants from any

---

[6] It  is arguable that Plaintiff's ADA claim  is also due to be dismissed based on his failure to exhaust his administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, **or any other Federal law,** by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added.) Although the court has not found the Eleventh Circuit Court to have specifically addressed this issue, other courts have determined that the exhaustion requirement of the PLRA applies to an inmate's ADA action. *See Butler v. Adams,* 397 F.3d 1181 (9th Cir. 2005); *Smith v. Haan,* 199 Fed. Appx. 594 (9th Cir. 2006); *McEachin v. Beard,* 136 Fed.Appx. 534 (3rd Cir. 2005).  Even if Plaintiff's ADA claim is not subject to § 1997(e)'s exhaustion requirements, this claim fails for the reasons explained, *infra*.

program or benefits on account of their disability.  42 U.S.C. § 12132. Title II, 42 U.S.C. § 12132 provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." Prisons and jails are public entities covered by the ADA. *See, e.g., Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206 (1998). To state a claim under Title II of the ADA, Plaintiff must allege that: (1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Miller v. King,* 384 F.3d 1248, 1265 (11th Cir. 2004).

The correctional defendants argue that, assuming Plaintiff may be considered a "qualified individual with a disability" for purposes of the ADA, he has not alleged nor demonstrated how he was excluded or denied services, programs, or activities because of any disability. (*Doc. No. 22*.)  Plaintiff responds in a conclusory manner that he is a qualified person with a disability because he received social security benefits for a mental disability, and specifically, for a previous diagnosis of bi-polar disorder and schizophrenia.  (*Doc. No. 29*.)

 "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Kentucky,*

19

*Inc. v. Williams,* 534 U.S. 184, 198 (2002). Since § 12102(2) defines disability "with respect to an individual," the existence of a disability is to be determined in "a case-by-case manner." *Id.* at 198. Consequently, Plaintiff cannot establish the existence of a "disability" under the ADA merely by stating that he suffered from a mental disability during the relevant period of time. Nonetheless, in this case, even assuming that Plaintiff's mental disability is a disability within the meaning of the ADA and that he may be considered a "qualified individual" as such is defined under the ADA, *see Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 n.4 (11th Cir. 2001), he would not have a cause of action because he has not provided any evidence of either exclusion from a service, program, or activity or that the denial/discontinuation of certain medication was the result of any intentional discrimination based on his alleged mental disability which is required by the ADA. Plaintiff acknowledges that he received mental health care, including medication, but claims that his inability to receive previously prescribed medication amounted to deliberate indifference because it caused a worsening of his mental condition and caused him to be unstable. (*Doc. No. 29.*) Plaintiff has not, however, rebutted the evidence explaining the basis for his prescription history and has not produced specific evidence showing that the decisions regarding his medication were made for discriminatory purposes or as a form of retaliation. In light of the foregoing, Defendants are due to be granted summary judgment on Plaintiff's ADA claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants Giles and Jenkins' motion for summary judgment on Plaintiff's Eighth Amendment Claim (*Doc. No. 22*) be GRANTED;

2.  Defendants' motions for summary judgment on Plaintiff's ADA claim (*Doc. Nos. 13, 14, 22, 32*) be GRANTED;

3.  Plaintiff's claims against Defendants Giles and Jenkins be DISMISSED with prejudice;

4.  Defendants Ferrell and James' motions for summary judgment on Plaintiff's Eighth Amendment claim (*Doc.  Nos. 13, 14, 32*)  be GRANTED to the extent these Defendants seek dismissal of this claim due to Plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Ventress Correctional Facility; and

5.  Plaintiff's Eighth Amendment claim against Defendants Ferrell and James be DISMISSED with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust an administrative remedy available to him during his confinement at the Ventress Correctional Facility;

6.  Costs of this action be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **November 11, 2010** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party  objects.  Frivolous, conclusive or

21

general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon the grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of October 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR
UNITED STATES MAGISTRATE JUDGE

22